Our second case today will be LW v. Jersey City Board of Education, No. 24-3252, and we will begin with you, Ms. Winslow. Thank you, Your Honor. Anastasia Winslow, appearing for LW. I will reserve 5 minutes of my time for rebuttal. At the outset, I would like to underscore procedural problems with this case. Besides the standard of review concerns set forth in the briefs, the treatment of the evidence was particularly unfair to my client. When we were before the Office of Administrative Law, the plaintiff had objected repeatedly about reliance on school district documents and that inferences could not be drawn for the documents and they could not be accepted for hearsay without witness testimony because we were having a hearing and we weren't proceeding on summary judgment. Can I ask a preliminary question? What is the exact remedy that's being sought? Is it a money remedy for not having had the education when she should have, or is it the ability to go back to school at the age that she is? Yes, very good question. Initially, when we filed this case, my client's primary objective was to get her high school diploma and that still is an objective and that's something that with her impairment is impossible really for her to get versus under traditional avenues. However, we are also seeking money damages for compensatory education for the harm to her from the loss of education as well as discrimination under the ADA. Today, presently, what we're seeking is a ruling the statute of limitations does not apply to her claims so that she may proceed on the merits. I'm sorry, when you say damages for compensatory education, I understand those to be different things. To the extent you're seeking compensatory education, that could be addressed through the provision of classes, of the educational services that the school district provides in any event. Is that right? The services could be provided and that would be in the form of compensatory education, but she is also seeking damages under the ADA and Section 504. So, those are the remedies that ultimately we'll be seeking in the event that we're allowed to proceed on the merits and have her claims adjudicated. Before the OAL, our objections had been sustained with regard to the inferences and the hearsay. And if the objections had not been sustained, I absolutely would have called Jean Karn as a witness, who was the school district employee who authored the documents, most of the documents in this case, to draw out the inconsistencies in her papers, including the statement that it was Plaintiff's brother who attended, who hung up the phone at that IEP meeting, rather than the mom. And it was only because our objections were sustained that I made a strategic decision not to call Jean Karn. And then nonetheless, before both the district court and the OAL, defendant was given the benefit of inferences from its documents, which were considered for hearsay content as true, even though it decided not to call any witnesses. And even after it was represented, they had interviewed the witnesses and decided not to call them. Ms. Ridgely, in terms of the drawing benefit of various inferences, you obviously have a stronger case when it's the standard of review that goes along with Rule 56 and summary judgment, as opposed to the modified de novo review standard. And after briefing in this case, we issued our Le Pape decision that made clear that the modified de novo review was appropriate for the IDEA claims, but summary judgment standard was appropriate for the 504 and ADA claims. So that was clearly error. But before we conclude that there's reversible error, we can consider whether if the correct standard of review was applied, it would have made any difference. So a couple questions for you. Given that it's the district court urging a standard of review, should we be remanding for the district court in the first instance to apply the correct standard of review? Or shall we proceed and consider whether applying a summary judgment standard of review and drawing the inferences in your client's favor, it would have made any difference to the outcome here? Very good question, Your Honor. I submit that this case need not be remanded to the district court to conduct an appropriate review of the record because the issue at hand is whether the statute of limitation applies. And that issue can be resolved based on legal issues that are subject to de novo review by this court on the record. And I'd like to really focus my arguments on that point on the statutory notice exceptions to the notice exception to the statute of limitations under the IDEA as a purely legal matter, they warrant reversal. So throughout this case, in interpreting the exceptions, the defendant has been collapsing both the IDEA's discovery rule with the exceptions. Defendant has been arguing because there's meeting notices that are allegedly sent to the mom and the child. Failure to then give statutory notices did not prevent them from filing for due process. Now, their theory and application of the exceptions is inconsistent with the IDEA. Applying that theory, the notice exception would have no effect for withholding of any notices required so long as the school district at one point in time over a long IDE process gave notices in a press. Isn't that our case law? If you're looking to the notice exception, then you need to show causation. The statutory language has in the preamble the requirement, the preventive language. And there was the discussion in DK case that this has a causation requirement, but I think that finding has to be considered in connection with the facts of this case. So applying basic, for example, basic notice of rights requirements, the purpose of them, the notice of rights requirements are to formally inform individuals as to their rights at specific points of time so that they can respond to specific events when those events happen so they can make informed decisions and respond to those events. So, for example, the district court held the notices wouldn't have made a difference even if they had been provided. I submit that FN's basic fairness principles underlying notice of rights requirements. It's like saying a doctor didn't have to give a patient informed consent before surgery because it would make no difference because this patient missed several doctor's appointments, wasn't really engaged in his care plan, and it wouldn't have made a difference. One thing that's kind of interesting to me is that over time your client was no longer a minor but became over the age of 18. And there's this provision in the IDEA, it's subsection M, 20 U.S.C. 1415 subsection N, that says, yeah, when a child reaches the age of majority, all rights accorded to parents under this subchapter transfer to children. I want to know how that fits in, in your view, with the causation analysis because I understand that what the district court said was, look, we're looking at the mother and we don't think the mother would have changed anything. But if those rights and somehow the causation of analysis pivots so that it's not centered on the mother but somehow centers on your immediate client LW, then it does appear that there's at least some evidence in the record that she was interested in resuming school and that she did make those requests in the time period that was far earlier than her being age 22. So what do you think we do with this kind of transfer of rights? Does it have any value in the notice context or not? Yes, absolutely. I think, and this has been debated in this case quite extensively. The transfer of rights means that at the time she turns 18 any rights that are existing at that time, for example, on any unexpired claims the right to pursue those would transfer to the adult student. And so if there were no statute of limitations applicable to claims that had developed those claims would continue unexpired and transferred to the adult. Then also any claims that then arose when she turned 18 and thereafter up until the age of 21, which is the duration of the IDEA, she would have then the independent right herself to pursue those. So I got that. I understand that. My question is does the transfer of rights provision have any bearing on the causation analysis? Do we still have to look to what the mother would do after rights have maybe transferred to the daughter? Well, as a practical matter, in this case, I believe that well, actually, I'm not exactly sure when they passed. But I think the analysis really just has to focus on the claims. Were there unexpired claims? And then when she turns 18 those claims are transferred to her. Now, there's no evidence at all in this record that was anything communicated after she was 18. So I don't think that anything the mother there was no communications to her. I just also want to emphasize the interpretation of this language. What Judge Phipps is asking you is do we have to look back at what the mother would have done? Or do we look independently then at what the young lady would have done? Yes, I think before she turns 18, the focus is well, depending on the claim. The focus is on the mother and the communications that were made to the mother, whether there was compliance with the act, whether there was compliance with IDEA provisions, and whether there was a statute of limitations that apply based on the interactions with the mother at that point. And then when she turns 18, the focus is on the adult student. However, when it comes to also the independent rights of the child, it's a different matter. So for example, the notice of transfer of rights requirement argument that we have advanced, as well as the reasonable efforts requirement claim, that those specifically relate to claims that my client is inserting in her own right based on obligations that extended directly to her. And I really like to emphasize the congressional intent when the statute of limitations provisions were added into the act, and considering the exceptions in this case. Ms. Rizlo, I'd like to ask you about one of the specific claims, and that is the claim as to first grade, the child fine claim. You talk about the social assessment report created in 2008 that stated apparently erroneously that while eligible for services, the services were not provided due to a lack of the father's consent. But if that report had been shown to H.W., at that point, arguably she would be on notice of the eligibility, that is the need, and that the services weren't provided. And so the time arguably could run if she had seen the report. I've looked in the record, and I don't see evidence that it was ever received. Is there anything in the record indicating that the mother received that social assessment report? There is no evidence in the record that either the mother or the father received the reports in first grade. There are comprehensive documents retained, and what the record reflects is that evaluation reports were not provided to the parents, but what they were given was this one and a half page summary stating the reasons why the school district found ineligibility in first grade. But I'm asking you about the social assessment report that was prepared in 2008. It was prepared around ninth grade, and at that point in 2009, if the statute of limitations began running in 2009, then arguably it expired. But if the parents didn't see that social assessment report, that LW was eligible for services, and that they hadn't been provided, it doesn't seem like that would have been shared with them. So I'm asking about whether that social assessment report in 2000 prepared in 2008, and that presumably could have been turned over as part of the 2009 IEP discussions. If there's any evidence that that report was ever received by HW or EW. Yes, there's no competent evidence that it was received. The defendant relies on hearsay statements from Ms. Karn as to what the home structure allegedly told Ms. Karn, and then Ms. Karn put into a document as to the receipt. So that bears upon my introductory statement with regard to the glance on hearsay. I also just want to emphasize another point too about the comment about even if she received these documents. I'm sorry, you're talking about Mr. LoCicero's statements? About which, the receipt of the documents. Those evaluations from 2009, there's no competent evidence in the record that anybody received them. The evidence in the record that the school district relies upon that the mom received evaluations from 2009 is based on hearsay that Jeanne Karn put into her case note. Their claim is that the home instructor took these documents, brought them to the home, no acknowledgement receipt, no signature, which very easily could have been obtained, that the home instructor who was giving instruction allegedly brought these documents to the home. There's no acknowledgement of that except for a hearsay statement made by Ms. Karn in her case notes as to what the home instructor allegedly told her. So that's the basis for their claim that those were received. I want to emphasize a very important point. Even if we assume in this record we're going to resolve these gaps in their favor, which is what the district court did, even if assumed that they had an IEP meeting, a parent goes to an IEP meeting, they get all the documentation, the evaluations, and it's all done properly, there are several outcomes that can happen from an IEP meeting. The school district can decline the IEP meeting, they can provide an IEP that the parents appreciate and think is proper, or in this case, they can offer an IEP that the parent doesn't like. At that point, the information that the parent has who's not an expert in the IDEA and the complicated procedures is like, oh, the school district is saying something that I disagree with. They don't know at that point, they're not expected to know under the statute, what they can do about it. The way that they're informed about what they can do about it is they get a prior written notice. And the prior written notice tells the parent, look, you have an IEP, you have rights. Your right is to contest this if you want to. And look here, here's some phone numbers of people that you can call. No disargument a little earlier. So we've let you go several minutes over time, Ms. Winslow, so I think we'll, unless either of my colleagues has a further question right now, we'll hear from you again on rebuttal. Judge Phipps, Judge Ross? Nothing further, thank you. Okay. Ms. Adams? Thank you, Your Honor. Let me please report. With respect to the issue about the argument about the hearsay, what happened was there are business records, the contemporaneous business records, school records of the student's file, and that's what was presented at the OAL level. Ms. Adams, can I return to a question that my colleague Judge Ross had asked earlier? And that is, we've heard both in the briefing and now at argument that the primary interest of L.W. is in compensatory education, is simply getting her high school degree. And that would seem to be services that the sorts of classes that the school district is always providing. What is the concern in terms of the provision of those services? You mean why didn't the school offer them? In terms of compensatory, that compensatory education, that seems like it would take this case easily off of all of our dockets. That may have been. That was discussed many years ago, and the issue was that the student at the time, now an adult, but she had not lived in Jersey City since 2011. So she was not even, I don't think, she was just 16. She stopped attending school before she was 16. She moved out of town and lived in other places other than Jersey City for the remainder of the time. She's never been back to Jersey City. At one point in time, we talked about offering to have her come back to Jersey City to receive educational services, but she was not in a position or able or that wasn't acceptable as a resolution. So that part of it was part of the discussion, but it didn't come to fruition because she was no longer residing where they could provide them. That was the discussion you mentioned many, many years ago? Many years ago when this first came up. And have there been, those discussions have not taken place more recently? It's never been, I've never been approached about providing services through Jersey City again. Okay, thank you. Can I also ask you about the question I had posed, which is where we know there was error in the district court's application of the standard of review. Should we be remanding for the district court to apply the correct standard? And if we proceed to apply it, how does the school district then fare given the inferences that would need to be drawn in favor of appellant? Well, I don't think there's a need for a remand for the simple reason that I think there is ample evidence for the statute of limitations decision that was rendered for both the IDEA and the ADA in 504 claims because all were out of time and the exceptions were properly rejected as not applying. But those determinations that they were out of time, they were based on the court's findings of, for example, Mr. LoCicero being more credible than LW who gave contradictory testimony about whether, for example, the IEP was received or not. If those, where there's conflicting evidence, if all the inferences need to be drawn in favor of the appellant, then don't those statute of limitations issues need to be revisited too? Well, with respect to Your Honor, the hearing below at the administrative level involved factual determinations on those very issues. So it wasn't a matter of inferences. There was testimony and there was testimony from the plaintiff. LW testified that she really didn't remember a lot, but she had no reason to dispute the notes that were provided, the case notes that were provided by Mr. LoCicero and those clearly indicate the discussion at the meeting first that she was there. They discussed the case plan, providing her services, moving her to a different school because she didn't want to go back to that school, and she understood at that meeting that she was being recommended for additional services. So that was in his case notes. Similarly, in the case notes with the second meeting where the mother was on the phone, his case notes, and they're quoted in our materials, talk about how the mother rejected the idea of the IEP, would not consent to the IEP, and there was a discussion. And LW was at both those meetings. Correct me if I'm wrong, but at that point, LW herself is a minor, right? Yes, I understand. So are you suggesting that the knowledge of a minor, for example, if she's at a meeting where she saw an IEP but a parent did not, that that would be attributable to her when she turns 18? I think the finding was what happened was the district court had remanded it for that issue. We did not necessarily believe that issue was relevant at the time because the parents were the one who had the rights over her at that time. So we believe that the issue was the limitations as applied to the parent. The district court remanded and asked to have it decided what LW, when LW knew or should have known about the eligibility or ability to receive services. So the administrative law judge determined that that happened at that time in 2009. And also that in terms of knowing whether any injury had occurred, that clearly when she was stopped attending school, was dropped from the roles, and also when she turned 18 and was not receiving any educational services, that those were other dates upon which she knew or should have known that she was not getting what she might have been entitled to from Jersey City. So it was both before and after age 18 that those factual findings were made. Does that answer your question? I'm not sure I'm following when after other than the hearing itself. You mean after 18? Yes. Well, no, the findings after the hearing at the administrative level where she knew or should have known that she was eligible for services in 2009, even though she was a minor, that she knew that the school district dropped her from the roles and wasn't providing worth of services after 2010. And then when she became 18 in 2012, she also knew she was not receiving anything from Jersey City Public Schools. So those three dates were what the administrative law judge relied upon. When is there evidence that she knew she was eligible? That was from the meeting in 2009. Because there was no real interaction with Jersey City and L.W. after that, after the mother did not consent to the IEP, other than the caseworker's interactions, which are documented in the record, where he talked about her returning to school, that she couldn't get home instruction, contacting them. Other than that, that was it until she moved. She stopped attending school and moved. So there were no interactions with Jersey City at all once she turned 18. Am I right that the argument that her first claim, the child fine claim, is time barred depends on H.W. seeing a copy of that There's no evidence. But as I said, the case notes in the full file document that these things were sent home. They're referenced in the IEP document as the evaluations. And I don't believe that that specifically would be triggering anything. Because the social assessment, if it said that she was denied services at 2001, in fact, she wasn't eligible in 2001. But there were other efforts to get her evaluated, which is where that 2008 assessment came from. However, in 2009, she was informed that she would be eligible for services. So I'm not even concerned about going back to 2008. But in 2009, the mother was informed she was eligible for services. The mother had signed off on a notice that excused a team member and which incorporated the parental rights in it. So she was given the parental rights. She participated in a meeting with her son for an IEP meeting and signed off on that IEP a few days later. So those were all relevant facts that were taken into account to say that the mother who we have always said had the right to determine whether or not the child received an IEP, knew that she was recommended for one but did not agree to. Right. But that's in ninth grade. I'm asking about her first claim, which is the first grade claim. And when is there any evidence that the mother was notified of eligibility in first grade? In first grade, she was determined not eligible. And at that time, the father was the person who was dealing with the school district. There's documentation in the record that the father received a notice saying she was not eligible for services that referenced the attached parental rights. And that, again, is in the school records for the student. What then do we make of the 2008 social assessment report that says that she was found eligible and that the father declined the services that were offered? I take it that is an error. That's all I can say about that. I mean, it was clear she wasn't receiving any services. And they had declined efforts to try to reevaluate her prior to 2009, but it wasn't in 2001. Okay. So in essence, so the business records were all in place and the case manager who was in charge of the case was the person who testified. And the case manager had no recollection of that many years past other than what was written in the contemporaneous case notes and the student file. So therefore, she wasn't testifying, but her case notes and the file documents are supported by the Lo Cicero testimony and his own case notes, which he verified were accurate to the best of his recollection. His testimony is also not definitive, right? His testimony that his case notes were accurate is definitive. I know he sort of backed off a little on cross-examination, but his testimony initially that he stood by what was in his case notes is fairly clear. What about his memory of having discussed the IEP with HW? Well, that's what he claimed he discussed. Whether he discussed the IEP, discussed her need to get services and trying to get her to agree to have LW get services. That's what he indicated. And that's what his case notes. So that's consistent with his case notes. And where we have conflicting evidence in the record as to what was received, if we're applying a summary judgment standard and inferences from the record are to be drawn in favor of appellant. Is there a genuine issue of material fact here that goes at a minimum to the statute of limitations issue? I don't believe so, Your Honor, because there is no dispute of facts as to whether the information was received because there was no person that got up and testified they did not receive them. What Ms. Winslow submitted after she got permission to do so was a request for admission saying there's no proof of mailing of the evaluations and of these various notices. So, of course, the answer was, yes, there's no proof of mailing in the file. However, the case notes do indicate that the information was submitted and also the case notes from the case manager as Ms. Winslow pointed out, say copies were delivered via the home instructor who was instructing the student at the time. So there was no disputing testimony. There's no fact dispute. Those are just questioned by Ms. Winslow, but there's no evidence to the contrary. I wanted to ask you also about the statute of limitations, which you're assuming the IDEA statute of limitations should carry over to the ADA the Section 504 claim. But we are supposed to look to the gravamen of a plaintiff's claim and consider whether it could have been brought at a public facility, whether an adult other than employee or visitor could have pressed the claim. So we can't just assume that it's the IDEA statute of limitations. At least as to claims 5, 6, and 7, it seems like those questions produce some mixed results. How do you address whether a New Jersey state law statute of limitations ought to be applying to the ADA and 504? I gather the import of that is that they have far more expansive equitable exceptions for tolling. I believe the entire nature of the allegations of this complaint all relate to whether she should have been receiving services under the IDEA. And therefore, everything is related to that. Now, she can file separate claims under ADA Section 504 New Jersey Lab. However, all of these things are covered by the same thing in terms of the IDEA and the provision of appropriate educational services. For example, and I misspoke. It was 6, 7, and 8, not 5, 6, and 7. Count 6, for example, alleges that the district didn't take reasonable steps to accommodate the disabilities to ensure that its communications were as effective as with non-disabled individuals. That doesn't seem like it's grounded in FAPE. That sounds like a much more general type of discrimination claim. I'm sure it does now. That wasn't how it started. Basically, even applying not the IDEA statute of limitations would be untimely as well because the efforts about the notices or what notices were given to general education students versus students who were referred for child study team evaluations all occurred prior to 2008, and it was well known at the time whether these notices were provided or not. There's not even any evidence or anything that has been presented or a dispute that general education students got some other type of notice that this plaintiff didn't get. While that's being argued, I understand what you're saying. There's no evidence that raises a fact dispute as to that. In any case, independently under those statutes, it would be untimely. When you say under those statutes, you mean if New Jersey law applied? No, under the ADA or Section 504 or if you're talking about the state claim, but that's not before you, I don't believe so. If the IDEA statute of limitations doesn't apply, then we're looking to the analogous state law statute of limitations, right? Based on the ADA and the Section 504 applicability of statute of limitations, yes. You're saying it would be untimely under the New Jersey statute of limitations? Yes. Why is that? Where we don't have that fully briefed before us, we don't have any of the equitable tolling, any of the exceptions on the running of the statute of limitations briefed before us, wouldn't we need to remand for the district court to consider that? I don't believe that's necessary. I think it's a similar standard to basically a knowledge of the injury that you're alleging and there's clearly nothing that can be held to have occurred after 2010 and the statute of limitations would be the two years. I am not aware of any other tolling, nor has one been presented through LW's briefing that there's some tolling provision to the New Jersey law having to do with extending it beyond two years after the knowledge of the injury that you're claiming is a violation. Just to chime in there, the IDEA has a little bit of a known or should have known component to its statute of limitations. Is there a known or should have known component to the New Jersey personal entry two-year statute of limitations? It's basically a similar type of analysis. I don't know if they use that phrase, but basically it's when either they were aware of the injury or should have been aware of the injury caused by the defendant. At one level, then, the interchangeability of the statute of limitations doesn't become important or the lack of interchangeability doesn't become important unless we want to get into understand things about tolling and things like that. But isn't tolling an exception to statute of limitations? Defendants to win on statute of limitations don't typically have to prove that no tolling applies. Typically, a defendant says the statute of limitations applies. The plaintiff comes back and says, these are the facts of my case and these are the reasons that it should be told. If that's the case at summary judgment, aren't we looking at what the undisputed facts are in the record? If there's no tolling facts, then that argument has been forfeited. I believe that, I mean, basically, the standard that was applied, if you're saying that the standard was improperly applied and that there are not enough fact findings to reach that decision, I mean, I feel quite comfortable if you believe it's necessary to remand it to the district court that they would apply the statute of limitations in the same manner that I'm suggesting. Tolling in terms of that personal injury statute of limitations is, in essence, yes, it would be told until she was 18, but she was aware of everything. So she would have a right to file after 18 on her own behalf, whereas rights before that would be perhaps with somebody on her behalf or her parents. But that doesn't mean that after she's 18 and was well aware of what the injury was, that she would have any additional time beyond two years to do so. I'm just trying to trace back your argument. Even with the benefit of the most favorable tolling, that puts the expiration of the statute of limitations at about age 20. And you're saying that she was a couple of years beyond that before she initiated this. That's correct. We've also had you go several minutes over. Again, unless my colleagues have further questions at this point, I think we'll hear from Ms. Winslow in rebuttal. Nothing further, thank you. Ms. Winslow. Thank you, Your Honor. Just one point regarding the ADA claims. The defendant moved for summary judgment on the administrative record. So they did not move for summary judgment on the ADA claims based on tolling under state law. None of that was briefed or addressed. There's been many conversations and allegations about what the record states. And I have had a lot of difficulties addressing that in this case in terms of statements being made that aren't really supported in the record. And so there's a lot of muddiness, I think, that's being asserted here as to what happened, who said what. All of this muddiness, if you look, it's unnecessary to address that. Focusing on the statutory notice exception alone, my client is entitled to judgment in her favor that the statute of limitations under the ADA does not apply. There are arguments all about known or should have known. If you superimpose known or should have known onto the exceptions, there's no exception. It's written out of the statute. Congress has two provisions in the statute for a reason. It means something else. And I submit if we look to the intent of Congress when the statute of limitations were entered into the act, it's informative. This was discussed in the GL case. GL discussed that the congressional intent in including a statute of limitation provisions in the act was to promote trust between school districts and families because the act contemplates collaboration and communication between them. So to promote that trust, when they put those statute of limitations in the act, they did two things. One, they told school districts you don't have to worry about parents knowingly, and I insist, I've said knowingly, sitting on their rights is suing you years later. But at the same time, they said to school districts, but you school districts, you have to be open and honest and transparent with families. And to get the benefit of this statute of limitations under the COSH rule, you can't misrepresent and you can't withhold information that's required to be conveyed under the act, information to inform the parents of their rights at specific points of time. And it would frustrate those congressional goals to interpret these exceptions in a watered down way to excuse the school district when it engages in misrepresentations and withholds information, as I did here. There is no evidence they ever even sent the IEP to the parents. No evidence of an eligibility notice. No prior written notice at various points of time. The prior written notice is a key document according to notice of rights requirements to inform parents of their rights at specific points of time so they can act. And it would promote the opposite result of what Congress intended. You're focusing a lot on what Congress intended. And it's interesting to me because the statutory phrase is if the parent was prevented from requesting the hearing due to either a misrepresentation or the lack of notice. And so it strikes me that if a school district comes forward and says, parent would have never done it anyway. Then the lack of notice, we've got a causal interruption because the lack of notice or the misrepresentation didn't cause the prevention. And so we have phrases that suggest we have a verb prevented and then we have this phrase due to which gives some causal nexus. And so it strikes me that if you want to find an exception to this you have to show that more or less, but for the lack of notice, the parent would have done it. And so I'm just curious here in terms of what do you have in the record that shows that a parent would have made these requests had they got the notice? That's a very important question, Judge, because it really focuses on the interpretation to be brought into this preventive language, which appears in the preamble as an interpretive tool. What I submit in a consistent with congressional intent, it means is that there needs to be a causal connection between the information that was withheld and the claim. So like in DK, there needs to be a connection. So in DK, the information that was withheld was an evaluation form. Well, they made the request for evaluation impromptu. There was a connection that makes sense. However, DK didn't say and one could not really venture to say that if the school district withholds a prior written notice at the time of an IEP to inform parents of what they can do, well, we're going to excuse that because the parents made a request for an evaluation. That doesn't make any sense. Consistent with basic notice of rights requirements, that has to be Congress's intent because it's trying to promote open communication, trust, and caveating the statute of limitations on the school districts providing important statutory notices that are essential to advise families of the rights. This is a very complicated statute. I mean, even a lawyer who's practicing in personal injury field is not expected to know, well, when you get an IEP, you can do something about it. They have to be alerted at certain points of time throughout the process as to what their rights are. And that is what Congress is asking. I guess what I'm saying is it also strikes me that Congress was recognizing that there will be some parents who, no matter what that notice comes in and says, will not make any sort of request. I mean, and so what you seem to be suggesting is that Congress operates with the presumption that every parent, no matter what, once they get the notice would make the request. But that's not the structure of the statute. The statute says, was prevented from requesting the hearing due to. And so that shows that what must do the work for the parent not requesting the hearing. There may be a lot of reasons a parent may not request a hearing. But the exception to the statute of limitations are only those two items, misrepresentation or lack of statutorily required notice. Not anything else. And so don't you have to show to fit into the statute of limitations that it was one of those two? Isn't that the truest reading of the text of the statute? The statute contemplates, which I think is the reality, that this is a complicated statute and that parents are not expected to know of all of their procedural rights during the course of this process. And applying notice of rights requirements, they need to be notified by the school district of what they can do. And in most instances, then this may be easy proof. Maybe the parent says, she would have told me that I definitely would have done it. In many instances, that proof may be easy. Maybe this exception goes a lot of the way to what you're saying. But there are some instances where maybe there's evidence that the parent's just going to be intransigent. And no matter what notice comes in, not make the request. And so it just comes down to what the proof is. And so I don't know that we have to say that any time there was notice it should have been done. And this seems to be the position you're advocating. Any time notice should have been provided, the statute of limitations can't apply. And wasn't provided, the statute of limitations can't apply. And you say it's a complicated statute. I'll tell you what, if Congress wanted that as intent, that's a lot easier to write. If you get the notice, if you're owed notice and you don't get it, the statute of limitations off. That's a lot easier to write than was prevented from requesting the hearing due to two specific exceptions. Yes. So there's various ways one can interpret this prevented language. And I am urging a remedial approach that furthers congressional intent considering the remedial purposes of the statute. And that the parents shouldn't be held to the level of the standard of an IDEA expert. And we shouldn't blame the parents for prior shortcomings in interpreting that language. It needs to be a causal connection. And that satisfies the prevented language because it's saying there needs to be a connection. And in this case as well, we do have evidence both as to the mom and the child that they were prevented to in responding due to lack of the withholding of the statutorily required information. So, for example, at the time of the first IEP meeting, they were required under the law to advise, I mean, they were required to send the IEP and inform of options in responding to that. That they could challenge it, that they could, you know, with the PWN. Instead, they gave misleading communication to DCPP. Now, if that letter to LoCicero had copied the parent and had all the information about and you can challenge this, that would come close to providing the information that was required. But they gave two options. And this is undisputed. And LoCicero's testimony was so compelling when he spoke to this. It was like a smoking gun testimony before the ALJ. He absolutely did not, was not informed of options. He had two options. You sign this IEP, which wasn't even a proper IEP because it wasn't developed in the meeting. So, it wasn't really even proper for them to ask the mom to consent to it. But in any case, you either sign this IEP, she goes to school, or don't sign. And that's what they wanted. No, at no time were any of these parts. And that's then what happened because that was communicated from LoCicero to the parent. And that's what happened. We've let you go several minutes over. I'm going to just give you just a moment to wrap up, if you would. Yes, Judge, thank you so much. So, I would just request, based on the statute of limitations exceptions, the competent evidence in the record, that this court enter an order finding that the statute of limitations does not apply to my client's claims, so that she can then proceed on the merits. And then as to the ADA and 504 claims, that the statute is under state law, which is something that would need to be addressed before the district court. Okay, we thank both counsel for their arguments today. We will take this case under advisement.